IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| MAYA BABA as Administratrix of the Estate of GHASSAN RADWAN BABA, | ) | |
| Plaintiff, | ) | |
| v. | ) | 1:24-CV-923 |
| SHERIFF JEFF CRISCO in his Official capacity, et al., | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Catherine C. Eagles, Chief District Judge.

In connection with their motions for summary judgment in this excessive force case, the defendants filed several exhibits under seal. The state defendants' motions to seal will largely be denied and the sheriff defendants' motion to unseal will largely be granted because the public's First Amendment right of access outweighs the interests in secrecy identified by the moving defendants.

## I. Background

The plaintiff administers the estate of Ghassan Radwan Baba. Doc. 1 at ¶¶ 7–8. She sued various state and local law enforcement officials and offices, claiming her brother's death was the result of an unlawful use of force in violation of his federal and state constitutional rights and North Carolina common law. *Id.* at ¶¶ 1–2, 9–18.

It is undisputed that on March 9, 2023, Mr. Baba died during an encounter with Highway Patrol Trooper Michael McCormick and Stanley County Deputy Sheriff Josiah

Garrett. Doc. 85 at 1–2. It is also undisputed that Mr. Baba had a firearm during that encounter. *Id.* at 2. The defendants contend that Mr. Baba was impaired, was involved in a one-car motor vehicle accident, disobeyed law enforcement commands, fled from law enforcement, shot at law enforcement officers, and ultimately killed himself with his own firearm. Doc. 56 at 2–5; Doc. 45 at 4–8. The plaintiff's claims arising from this encounter were the subject of the defendants' summary judgment motions, which the Court has granted by separate order. Doc. 85.

The pending motions to seal and unseal have a convoluted procedural history, which the Court need not detail here. *See generally* Doc. 70 at 1–2. The appropriate motions and briefs have now been filed, and all parties have had an opportunity to be heard. The state defendants, Trooper McCormick and the North Carolina Highway Patrol, seek to seal thirteen exhibits in their entirety. Docs. 74, 80. The sheriff defendants, Deputy Garrett, Sheriff Jeff Crisco, and Cincinnati Insurance Company, now seek to unseal two of those exhibits. Doc. 78. Neither the plaintiff nor any third parties have expressed a position.

## II. Legal Standard

The public has a right of access to judicial records. *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978) ("[T]he courts of this country recognize a general right to inspect and copy . . . judicial records and documents."). "There are two sources of the presumptive right of access to judicial records: common law and the First Amendment." *Franklin v. City of Charlotte*, No. 3:20-CV-330, 2021 WL 5443566, at *2 (W.D.N.C. Nov. 19, 2021). The "First Amendment right of access attaches to materials filed in

connection with a summary judgment motion." *Doe v. Pub. Citizen*, 749 F.3d 246, 267 (4th Cir. 2014).

To determine whether a motion to seal should be granted in the face of a First Amendment right of access, courts evaluate: (1) whether sealing the information serves a compelling interest, (2) whether in the absence of sealing, there is a substantial probability that the compelling interest will be harmed, and (3) if no alternatives would adequately protect the compelling interest. *See United States v. Doe*, 962 F.3d 139, 146 (4th Cir. 2020). The compelling interest must be "narrowly tailored," and the moving party must present "specific reasons that justify restricting access to the information; conclusory assertions are not sufficient." *Syngenta Crop Prot., LLC v. Willowood, LLC*, No. 15-CV-274, 2017 WL 6001818, at *3 (M.D.N.C. Dec. 4, 2017) (cleaned up); *see also Gray Media Grp., Inc. v. Loveridge*, 155 F.4th 330, 340 (4th Cir. 2025) ("The First Amendment right of public access is too precious to be foreclosed by conclusory assertions or unsupported speculation." (cleaned up)).

"When a state statute prohibiting disclosure is the source of the governmental interest in sealing, district courts should first determine if the relevant records are covered by the statute and, if so, determine whether the right of access nevertheless outweighs the state's interest in sealing." *Scott v. City of Durham*, No. 20-CV-558, 2022 WL 767557, at *2 (M.D.N.C. Mar. 14, 2022) (citing *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 178, 181 (4th Cir. 1988)).

If a court decides to seal judicial records, it must make specific findings and state the reasons for its decision to seal over less drastic alternatives. *Va. Dep't of State Police*

*v. Wash. Post*, 386 F.3d 567, 576 (4th Cir. 2004). Before sealing judicial records, the district court must also give the public notice and a reasonable opportunity to challenge the request to seal. *Id.*; *Doe*, 749 F.3d at 272.

## III. Findings and Analysis

The First Amendment right of access applies to all the exhibits because they were filed in connection with summary judgment motions. *See Doe*, 749 F.3d at 267. The public has had notice of both motions to seal, which have now been on the docket for over six weeks. Doc. 74 (filed July 29, 2026); Doc. 80 (filed Aug. 7, 2026). With one very minor exception, *see infra* at § II(B) (discussing the dates of birth of nonparties), the defendants did a good job of complying with the requirement to avoid complicating motions to seal by filing excerpts including only the material evidence and excluding immaterial evidence likely to give rise to confidentiality issues. LR 5.4(a)(3); Doc. 7 at ¶ 7. Therefore, the motion to seal is narrowly tailored, with that same one small exception.

The exhibits can be divided into four categories: (A) body worn camera and dash camera videos; (B) state law enforcement investigation documents; (C) the autopsy and toxicology report; and (D) the Stanly County computer-aided dispatch notes ("CAD").

### A. Body Worn Camera and Dash Camera Videos

"The public has a particularly strong interest in evaluating whether law enforcement officers are upholding the Constitution," and that interest is particularly strong when "the video of the interaction at issue is key evidence in evaluating whether such constitutional violations occurred." *Duncan v. Cnty. of Surry*, No. 24-CV-938, 2026

WL 1998787, at *3 (M.D.N.C. July 10, 2026). Here, the videos each provide different perspectives of some of the events at issue in this litigation and are crucial to understanding the reasons for the Court's order granting summary judgment to the defendants.[1] For example:

- Deputy Garrett's body worn camera video records a perspective shortly after the shooting and the location of a gun by the decedent immediately after the shooting. Garrett's Body Cam 0:00–2:05.
- Trooper McCormick's dash camera video shows much of the initial interaction between Trooper McCormick and Mr. Baba and confirms the testimony of Trooper McCormick and Deputy Garrett, including showing that Mr. Baba disobeyed law enforcement commands when he reached into his pocket and when he fled from those officers. McCormick's Dash Cam at 3:25–6:40.
- Deputy Garrett's dash camera video shows another perspective of the events leading up to Mr. Baba's flight. Garrett's Dash Cam at 21:00–21:15.

---

[1] The electronic docketing system does not allow for electronic filing of video evidence, under seal or otherwise. The defendants have therefore manually and conventionally filed thumb drives containing videos from body worn cameras and vehicle dashboard cameras, and those filings are reflected by docket entries at Doc. 46 and Doc. 57. The one video filed by the sheriff defendants, Doc. 46, was filed on one thumb drive. The four videos filed by the state defendants, Doc. 57, were filed on two thumb drives. The videos included in Doc. 57 are: State Defendants' Exhibit 3 — Trooper McCormick's Dash Camera Video ("McCormick's Dash Cam"); State Defendants' Exhibit 5 — Deputy Garrett's Body Worn Camera Video ("Garrett's Body Cam"); State Defendants' Exhibit 6 — Deputy Garrett's Dash Camera Video ("Garrett's Dash Cam"); State Defendants' Exhibit 7 — Sergeant Brian Butler's Dash Camera Video ("Butler's Dash Cam"). Doc. 46 is Sheriff Defendants' Exhibit 1C — Excerpt from Garrett's Body Worn Camera. Because Doc. 46 and Doc. 57 both contain Garrett's Body Cam video, the Court will refer to them both as "Garrett's Body Cam."

- Sergeant Butler's dash camera video shows Deputy Garrett and Trooper McCormick shortly after Mr. Baba's death with their guns still drawn but not shooting. Butler's Dash Cam 4:50–5:15.

The sheriff defendants now move to unseal the portion of Deputy Garrett's body worn camera video that they originally filed under seal. Doc. 79 at 4.[2] The sheriff defendants believe that the video ought to be unsealed because the public's First Amendment right "outweighs any countervailing government interest" and "the footage does not reveal any highly sensitive information, would not jeopardize any person's safety, and would not create any serious threat to the administration of justice." *Id.* at 3–4 (citing N.C. Gen. Stat. § 132-1.4A(g)(4-6)).

In support of the motions to seal, the state defendants assert that video recordings are confidential and protected under N.C. Gen. Stat. § 132-1.4A. Doc. 75 at 6. But "§ 132-1.4A(g) does not require confidentiality of all body-worn camera footage" and the statute allows for disclosure of videos by court order. *Duncan*, 2026 WL 1998787, at *3; *see* N.C. Gen. Stat. § 132-1.4A(g). The statute lists standards a court considers, "in addition to any other standards the court deems relevant," when determining whether to release a recording, and those factors generally line up with the factors relevant to motions to seal. N.C. Gen. Stat. § 132-1.4A(g); *see Duncan*, 2026 WL 1998787, at *3.

---

[2] The sheriff defendants explain that they filed the body camera video, Doc. 46, and excerpts of the SBI report, Doc. 48, originally under seal to comply with the protective order agreed upon with the SBI so that they could receive the documents during discovery. Doc. 79 at 2.

The "strong public interest" in "transparency of law enforcement activity" weighs heavily in favor of unsealing the videos. *Craven v. Novelli*, 661 F. Supp. 3d 430, 457–58 (W.D.N.C. 2023). As this Court has recently noted in discussing the statutory provision on which the state defendants rely, because of the strong public interest in access, "[f]ederal courts in North Carolina routinely deny motions to seal videos from body worn cameras used by law enforcement officers when filed in connection with summary judgment motions." *Duncan*, 2026 WL 1998787, at *2; *accord Craven*, 661 F. Supp. 3d at 457–58 (finding "strong public interest" in "transparency of law enforcement activity" and denying motion to seal police officer's body camera video). The same general reasoning applies to dash camera videos. *See Knight Est. of Graham v. City of Fayetteville*, 234 F. Supp. 3d 669, 683 (E.D.N.C. 2017) (dash camera video).

As the state defendants correctly point out, there can be cases where body worn or dash camera videos might appropriately be sealed based on "security risks" and "privacy reasons." Doc. 75 at 7 (citing *Duncan*, 2026 WL 1998787, at *4–5). But the security risks the Court in *Duncan* referenced from *Caporasso v. Barnes*, No. 23-CV-825, 2025 WL 3300248, at *16 (M.D.N.C. July 21, 2025) (Mag. J., memorandum opinion, order, and recommendation), *adopted*, 2025 WL 3296490 (M.D.N.C. Nov. 26, 2025), and *Pacheco v. Anderson*, No. 5:24-CV-41, 2025 WL 3755591, at *6 (W.D.N.C. Dec. 29, 2025), are specific to jail or prison settings and are inapplicable here. *Duncan*, 2026 WL 1998787, at *2. No party has provided any specific evidence of privacy concerns[3] and

[3] The plaintiff has not expressed any privacy concerns about allowing public access to these videos.

the videos do not show the kind of graphic detail that was present in *Craven*, 661 F. Supp. 3d at 458. Nor have the state defendants pointed to any other specific interest supporting secrecy.

The state defendants say that "[t]he details and depictions of [the] activities by an individual in his last moments of life are of a private nature." Doc. 75 at 8. That is usually the case, and, as the state defendants also point out, uncontrolled access to these videos carries a real possibility of misuse and unfairness.[4] *See id.* at 9. Here, those rights can be protected while still honoring the public's right of access by unsealing these videos but restricting access to viewing in the Clerk's office. In other words, no copying or downloading of these videos will be allowed, absent further court order explicitly so allowing.

The motion to seal these videos will be denied, subject to that narrowly-tailored restriction.

**B. State Law Enforcement Investigation Documents**

The state law enforcement investigation documents are:

- Excerpts from the NCSBI Crime Scene Examination Report. Docs. 48, 59-7.[5]
- North Carolina SBI Case Number 2023-00660 (1178) Synopsis. Doc. 59-3.

---

[4] By way of example only, videos can be edited and then posted online in a way that defames the law enforcement officers involved or that changes the details of the shooting to be more graphic, inaccurate, or otherwise in ways that could be harmful to the victim's family.

[5] These exhibits are both excerpts of the SBI report, but they are not completely identical. The version filed by the sheriff defendants, Doc. 48, includes photographs not included in the excerpts filed by the state defendants. Doc. 59-7. And the state defendants filed a much longer portion of the report. *Compare id. with* Doc. 48.

- North Carolina State Highway Patrol Investigative Report of Trooper McCormick. Doc. 59-6.
- Interview of Sergeant Butler dated March 9, 2023. Doc. 59-4

The state defendants rely on N.C. Gen. Stat. § 132-1.4 to assert that records of "criminal investigations and criminal intelligence information gathered by public law enforcement agencies are not public records." Doc. 75 at 5. But that statute does not absolutely prohibit public disclosure. Just like the statute governing public access to law enforcement body worn camera videos, the statute provides that such records "may be released by order of a court of competent jurisdiction." N.C. Gen. Stat. § 132-1.4(a).

There is a weighty public interest in access to these documents. The excerpts from the NCSBI Crime Scene Examination Report, the NCSBI Synopsis, and the NC State Highway Patrol Investigative Report contain key evidence about where shell casings were located at the scene and where the Sig Sauer gun was found in relation to Mr. Baba's body. *See* Doc. 48 at 3–5; Doc. 59-7 at 8–12, 34; Doc. 59-3 at 4; Doc. 59-6 at 3. This evidence goes directly to Ms. Baba's claims and the issue of liability for all defendants. See Doc. 85 at 12-14. The reports also contain early statements made by the various witnesses about the events at issue, which here are consistent with each other, later statements, and the physical evidence. *See* Doc. 48 at 2; Doc. 59-7 at 2; Doc. 59-3 at 3–4; Doc. 59-6 at 2. This evidence is necessary for the public to fully understand and evaluate the basis for the Court's summary judgment decision.

As part of the NCSBI investigation, the NCSBI interviewed Sergeant Butler, of the Stanley County Sheriff's Office, about what he saw and did. A summary of Sergeant Butler's interview is provided in Doc. 59-4. Sergeant Butler appears to have arrived on the scene immediately after Mr. Baba's death but while the other two officers were still some distance away from Mr. Baba. Doc. 59-4 at 2. According to Sergeant Butler, he, Deputy Garrett, and Trooper McCormick then approached Mr. Baba's body just after the shooting and Sergeant Butler kicked a gun away from Mr. Baba's hand. *Id.* at 3. This evidence strongly supports the defendants' version of events and is consistent with other evidence. *Compare id. with* McCormick's Dash Cam at 3:25–6:40 *and* Garrett's Body Cam at 0:00–2:05. This evidence too is necessary for the public to fully understand and evaluate the basis for the Court's summary judgment decision.

Law enforcement investigation files are often appropriately sealed because such sealing is usually necessary to "facilitate the investigation or prosecution of criminal offenses." N.C. Gen. Stat. § 130A-385(d6). But here the record is clear that no charges were brought against Trooper McCormick or Deputy Garrett, Doc. 56 at 5; Doc. 59-6 at 3–4, and there is no indication of an ongoing criminal investigation.

The sheriff defendants also move to unseal the excerpts of the NCSBI Crime Scene Examination Report that they originally filed under seal. Doc. 79 at 4. The excerpt the sheriff defendants filed includes a photo showing Mr. Baba's body lying on his back with numbered items that show where the Sig Sauer gun was and some placards placed where shell casings were found. Doc. 48 at 6. The sheriff defendants included

this image to show where shell casings from the Sig Sauer gun were found, Doc. 79 at 4, as it is relevant to that important fact.

The Court recognizes that the image may be sensitive for Mr. Baba's family. If it were unsealed, it would be available on the electronic docket, from which it could easily be reproduced, distributed, modified, or misused by others. *See supra* n.4. The picture is duplicative of other evidence that will be unsealed, and thus it does not show anything crucial to public understanding of the Court's summary judgment decision.[6] Because the image does not add anything that the Court and public do not already know from the body camera video and the excerpts from the SBI report filed by the state defendants, the Court will grant the state defendants' motion to seal and deny the sheriff defendants' motion to unseal the photograph. *See Craven*, 661 F. Supp. 3d at 458 (sealing "duplicative" exhibits because "[d]isclosure of that information would violate Plaintiff and her children's privacy without furthering the [public's interest]").

The state defendants contend that the Highway Patrol Report and the autopsy, discussed *infra* at § II(C), "contain statute defined confidential information, which parties not a part of this litigation did not consent to such information becoming public record." Doc. 75 at 7. While they do not identify that information with clarity, the Court recognizes the excerpt from the NCSBI report filed by the state defendants includes dates

[6] The location of the gun near the body can be seen in the body camera video. *See* Garrett's Body Cam at 1:42–2:15 (showing a gun near Mr. Baba's right hand). The photograph does not show the shell casings themselves, only the placards noting where they were found; that information is described elsewhere in the SBI report, both in writing and in a diagram. Doc. 59-7 at 8–12, 34.

of birth of witnesses. Doc. 59-7 at 17–20 (the dates of birth of all homeowners in the area of the shooting). This information was irrelevant to the summary judgment decision and, while arguably relevant to show that the Highway Patrol was thorough in its investigation, that is not a highly material fact. As to this personal information, the Court will allow the state defendants to replace the current document with a version redacting the dates of birth.

Beyond the dates of birth and the one photograph, the state defendants' motion to seal will be denied and the sheriff defendants' motion to unseal will be granted. The public's First Amendment right of access outweighs the interests in secrecy identified by the moving defendants.

**C. The Autopsy and Toxicology Reports**

As the state defendants accurately point out, autopsy exhibits are confidential by statute and can be released by a judge only under a showing of good cause. Doc. 75 at 5; N.C. Gen. Stat. § 130A-385(d1). This is also true of toxicology reports included in the medical examiner investigation file. N.C. Gen. Stat. § 130A-385(d1).

> To determine if there is "good cause" to release these reports, courts consider: whether the disclosure or release is necessary for the public evaluation of governmental performance, the seriousness of the intrusion into the family's right to privacy, whether the requested disclosure or release is the least intrusive means available, the need to withhold the records to facilitate the investigation or prosecution of criminal offenses, the rights of the defendant in any ongoing criminal investigation or prosecution, the public interest in having access to the records or materials, and the availability of similar information in other public records, regardless of form.

N.C. Gen. Stat. § 130A-385(d6). And, of course, nothing in this statute trumps the public's First Amendment rights.

The Court finds good cause under these standards and that unsealing is appropriate under the First Amendment. The reports are necessary to know where Mr. Baba was shot, that soot was found near the entrance wound on his head, and that he was under the influence of several drugs the time, including cocaine and methamphetamines. Doc. 59-5 at 2–3; Doc. 59-2 at 2. Access to this information is necessary for the public to evaluate the conduct and action of government actors, i.e., "government's performance."

The Court appreciates that the autopsy contains detailed information about the condition of Mr. Baba's body at the time of his death. Often privacy interests and potential mental health harm to a deceased's family might well support keeping autopsy reports sealed, at least in part. Here, however, neither the plaintiff nor anyone else in Mr. Baba's family has raised any such concerns, the autopsy report as filed does not include images of Mr. Baba's body, and public disclosure supports public understanding of the reasons the Court granted summary judgment for the defendants.

The defendants' motion to seal these records will be denied.

**D. The Stanly County CAD**

This exhibit, now filed under seal at Doc. 59-1, includes a cover page apparently written by someone at the SBI, followed by the relevant county dispatch notes from the night of Mr. Baba's death. The first page authenticates the attached record as received from Stanley County along with a brief summary of what those records show. The records themselves are not that easy to follow, but consistent with the cover page summary, they appear to show, for example, the time the initial call was received reporting that there was a car in a ditch, the time Trooper McCormick radioed that he had

Mr. Baba at gunpoint and requested law assistance, and the time when a medical examiner was requested. *Id.* at 4–5.

The state defendants make no specific argument as to why this exhibit should be sealed. Nothing in this document appears to be confidential. The defendants' motion to seal this exhibit will be denied.

## IV. Table Summary

For easy reference, the following table summarizes the Court's decisions.

| Public Docket No. | Sealed Docket No. | Document Description | Result |
|---|---|---|---|
| 56-2 | 59-1 | Stanly County CAD (Exhibit 1 to state defendants' MSJ) | Unseal Doc. 59-1. |
| 56-3 | 59-2 | Toxicology Report (Exhibit 2 to state defendants' MSJ) | Unseal Doc. 59-2. |
| 56-4 | 57 | Dash Cam of Trooper McCormick's Service Vehicle (Exhibit 3 to state defendants' MSJ) | Unseal the video referenced at Doc. 57 with access restricted to viewing in the Clerk's office. |
| 56-5 | 59-3 | SBI Case Synopsis (Exhibit 4 to state defendants' MSJ) | Unseal Doc. 59-3. |
| 56-6 | 57 | Body Worn Camera Video of Josiah Garrett (Exhibit 5 to state defendants' MSJ) | Unseal the video referenced at Doc. 57 with access restricted to viewing in the Clerk's office. |
| 56-7 | 57 | Dash Cam Video of Josiah Garrett (Exhibit 6 to state defendants' MSJ) | Unseal the video referenced at Doc. 57 with access restricted to viewing in the Clerk's office. |
| 56-8 | 57 | Dash Cam Video of Brian Butler (Exhibit 7 to state defendants' MSJ) | Unseal the video referenced at Doc. 57 with access restricted to viewing in the Clerk's office. |

| | | | |
|---|---|---|---|
| 56-9 | 59-4 | Interview of Brian Butler dated March 9, 2023 (Exhibit 8 to state defendants' MSJ) | Unseal Doc. 59-4. |
| 56-10 | 59-5 | Autopsy (Exhibit 9 to state defendants' MSJ) | Unseal Doc. 59-5. |
| 56-11 | 59-6 | Highway Patrol Investigative Report of Trooper McCormick (Exhibit 10 to state defendants' MSJ) | Unseal Doc. 59-6. |
| 56-12 | 59-7 | NCSBI Crime Scene Investigation Report (Exhibit 11 to state defendants' MSJ) | Unseal Doc 59-7 after substituting version redacting dates of birth on pages at 17–20. |
| 45-5 | 46 | Body Worn Camera Video of Josiah Garrett (Exhibit 1C to sheriff defendants' MSJ) | Unseal the video referenced at Doc. 46 with access restricted to viewing in the Clerk's office. |
| 45-6 | 48 | Select pages and photos from SBI investigative file (Exhibit 1D to sheriff defendants' MSJ) | Remain sealed, but sheriff defendants to file public version with the photo of Mr. Baba at Doc. 48, page 6 redacted. |

## V. Conclusion

A man died during an encounter with law enforcement. By separate order, the Court concluded that as a matter of law that the plaintiff had not produced evidence of excessive force, of a constitutional violation, and of a tort. The public has a strong interest in access to the evidence that supports that conclusion and to the entirety of the evidence so it can evaluate for itself whether there is a lack of evidence for the plaintiff's claims. The law enforcement officers involved are entitled to have the public see for themselves that they did not violate Mr. Baba's constitutional rights. With minimal exceptions related to minimally relevant evidence, there are no strong interests in favor of

hiding this evidence from the public. The motion to seal will be denied in part and the motion to unseal will be granted in part.

It is **ORDERED** that:

1. The defendants' motions to seal, Docs. 74, 80, are **DENIED** in part and **GRANTED** in part;
2. The defendants' motion to unseal, Doc. 78, is **DENIED** in part and **GRANTED** in part;
3. The Clerk **SHALL** immediately unseal Docs. 59-1, 59-2, 59-3, 59-4, 59-5, and 59-6.
4. The Clerk **SHALL** make the manually-filed videos, referenced at Docs. 46 and 57, available for review by the public in the Clerk's office on a computer maintained by the Clerk but **SHALL NOT** allow any copying or electronic transmission of the videos.
5. The Clerk **SHALL** maintain Doc. 48 under seal. Within five business days, the sheriff defendants **SHALL** separately file an additional copy of that exhibit, Doc. 48, on the public docket that does not include the photograph of the decedent shown at Doc. 48 at 6.
6. The Clerk **SHALL** temporarily maintain Doc. 59-7 under seal. Within five business days, the defendants **SHALL** provide the Clerk with a version of Doc. 59-7 that redacts the dates of birth of third-parties and the Clerk **SHALL** substitute the redacted version on the docket and unseal the redacted version.

7. The Local rule 5.5 Report at Doc. 83 was docketed as a motion but is not in the form of a motion. All matters addressed in that report are resolved by this order, and the Clerk shall terminate that motion.

This the 23rd day of September, 2026.

UNITED STATES DISTRICT JUDGE